Okay, now our first case for argument is 24-1488 Eagle View Technology v. Nearmap. Mrs. Vu, please proceed. Good morning, and may it please the court. I'm Laura Vu on behalf of Eagle View. This appeal addresses errors in the board's analysis of the calculating or determining a pitch limitation and motivation to combine. Starting with calculating a pitch, the board found Littleworth teaches that limitation, but Littleworth has no calculation or numbers. It only has a drawing. And so, in order for the board to find that Littleworth teaches the calculation limitation, it had to either read in a calculation teaching into Littleworth through an improper inherency analysis or it had to read the calculation requirement out of the claim. Either way, the board erred. Starting first with the inherency analysis, the board improperly found Littleworth discloses calculating a pitch using inherency without applying the proper inherency standard. The board substantively relied on an inherency theory by finding that a single statement in Littleworth, a statement saying roof detail was digitized indicating their pitch teaches calculation. The board rejected your understanding of Nearmap's theory when you said that Nearmap relied on an inherency argument and the board said, no, that's not how they read the petition nor how they read the expert's declaration. And we give the board quite a bit of discretion in how it chooses to read and understand a petitioner's theory. Isn't that right? That is true, but the court has found previously that the court can just look at the board's analysis and determine the board was relying on inherency even when the board doesn't explicitly say so. And that's exactly what happened in LBT and personal life. But here the board specifically said, we reject Eagleview's belief that the petitioner relied on an inherency theory, is that right? That is right. So we have to review that conclusion by the board for abuse of discretion, is that right? In this case, it would be a legal error because the board improperly applied the inherency analysis and that's, I think that's how the court analyzed the board's analysis in LBT and personal web. They looked at the board's analysis and in both those cases, the board did not say it was relying on inherency, but the court looking at the board's analysis determined that it was substantively relying on inherency. And that's exactly the case here. So you're asking us to review the board's analysis here and reach a legal conclusion that the board itself was relying on an inherency theory? Yes, because again, personal web and LBT allow the court to do that. The court can examine the board's analysis and determine that the board was substantively relying on inherency even though the board doesn't explicitly say so. Okay, so the board seemed to find that both Littleworth and Middlebrook disclose determining slash calculating a pitch and pointed to specific statements within those two references. One saying, you know, I think Littleworth's saying it's literally indicating a pitch and then the other one saying you can make all kinds of measurements of different kinds of dimensions, which the board said would include a pitch. So what's wrong with what the board did there in relying on specific statements from those two references? Our position is that the board only relied on Littleworth for teaching calculating a and that is at the board's decision at Appendix 67. In this part of the board's decision, the board is actually rejecting Eagleview's arguments in the patent owner response that Middlebrook does not teach calculating a pitch. The pages cited of the patent owner response, pages 68 to 71, I believe, that corresponds to Appendix 575 to 577. Those pages are Eagleview's arguments arguing that Middlebrook does not teach calculating a pitch and the board rejected those arguments and said petitioner does not rely on Middlebrook to teach those claim elements. And so in light of this statement by the board, our position is that the board viewed Littleworth as teaching calculating a pitch. And so the disclosures that the board relied on in Littleworth do not teach calculating a pitch on its face and so the board had to read an inherent teaching into Littleworth. My understanding is that the board instead said that instead of relying on inherency, they were just simply making a finding as to what a person of ordinary skill in the closed or obvious from Littleworth. How would you have us draw the line between a simple sort of fact finding about what one of skill you are would read into something as opposed to applying the doctrine of inherency? So I think, again, LBT is quite instructive on that question. And so what the board did here was it found that a statement, you know, roof detail was digitized indicating a pitch teaches calculation. That statement does not say calculate and so the board used the expert testimony to fill the gap and testify that a person of that, you know, this statement teaches calculating a pitch. They didn't say it would be obvious. They said this statement teaches calculating a pitch. However, if you look at the deposition testimony from the expert, the expert concedes that there is not necessarily a calculation of a pitch. The deposition testimony at appendix 4474 and 4525 all say there is a calculation of a pitch somewhere in there and the system is not necessarily calculating a pitch and so that. Just to follow up on Judge Stark's question in terms of where is the line between understanding whether a theory is based on inherency versus a theory of reading something expressed in a prior art reference and interpreting that expressed statement as carrying with it some particularized meaning. That's my understanding of what would be the distinction between an example where what if Littleworth never said anything about pitch and then Dr. Forsythe had to come forward and say, okay, this reference doesn't say anything about pitch, but I can tell when it, given that it's talking about generating a 3D model of all these buildings using these aerial images, the only way you can reliably form a 3D model is not only getting the area of the roof, but also the pitch of the roof. That's the only way you can do it. That would be an inherency theory, but here we have expressly from Littleworth a statement saying we're going to have a 3D model and it's going to indicate the pitch of any roof. Now it feels like that seems fair game for an expert to say a person of ordinary skill in the art reading that statement in Littleworth would understand indicating a pitch in your generated 3D model would mean that you were actually making a determination slash calculation of said pitch. And I think if that's the understanding that the petitioner pushed forward, why wouldn't that be an appropriate way of explaining what the reference discloses without relying on an inherency theory? So I'm going to try to take that question in pieces. Just to start, so the statement indicating a pitch does not say calculating, and so I think we have to start from that question, what does indicating a pitch mean? So there is clearly a gap between what does indicating mean and what the claim requires, which is calculating a pitch. And there's evidence in the record showing that there are other ways to indicate a pitch besides calculating a pitch. What Littleworth was directed to was just taking images and generating a model. You could generate a model without doing actual measurements and without doing calculations. You could simply just look at something and draw it, even on paper, but in this case it would be a 3D model perhaps in CAD. And so there's not necessarily a calculation of a pitch, which is, I think, why our position is that there is an improper inherency analysis where the board didn't apply the correct standard. Do you want to take a few minutes and touch upon your accuracy argument? Is that the claim construction argument you're referring to? Yeah, the estimation versus accuracy argument. So our position on the claim construction issue is that claim construction and inherency are really just two sides of the same coin. And so by the board interpreting calculating a pitch to be met by something that is less than an actual calculation, they're interpreting the plain meaning of the word calculating out of the claim. We believe the claim requires an actual calculation, and so an estimate or a drawing, which would not be sufficient. I think that's all we would like to say on that. If the court has any further questions, I can move on. Okay. You had a motivation to combine argument. Yes. So our motivation to combine argument is that the board erred by failing to consider Eagleview's arguments as to motivation to combine because it found that Eagleview's arguments were directed to a limitation that was not present in the claims. And the board was wrong for two reasons. Just to set the stage a little bit, the argument by Eagleview was that you couldn't combine Littleworth's images, which refer to like a top-down and a side image, with Linder's teachings, which refer to two images from the same perspective, like what you would see from your eyes. You could not combine those two. And the board dismissed Eagleview's arguments because it believed that the claims did not require any perspectives. That is wrong because there are claims that require this concept of different perspectives. In the 436 patent, that's claims 1 and 18, they explicitly require that the images are not a stereoscopic pair. That is the technical term for the different perspectives that we're talking about. Yeah, but during the re-exam prosecution history, it seems like your side came up with a very particular definition of what it means to be not a stereoscopic pair to overcome a prior art reference, i.e., you basically said, well, we're going to add this limitation not a stereoscopic pair, and what that phrase means is it's something that's not whatever that prior art reference is. So, I believe what the claim requires is, you know, it explicitly requires a top-down and a side view image, and those images are not a stereoscopic pair. And so, by saying not a stereoscopic pair, Eagleview is trying to differentiate using these images from different perspectives, again, top-down and side, with the similar perspectives. I guess the bottom line question I have on this motivation issue is this. You start with Littleworth. Littleworth already says that it's generating a suitable 3D model from these aerial images. It could be a top-down view and as well as an oblique view, and then it also talks about how you would use control points across the images, but it doesn't give you any details about exactly how you would use control points across two images. Well, that's where Linder comes in, because Linder talks about just the kind of elemental understanding of when you use control points, the same control points across multiple images, you're going to do some correlation of the images. And that's really all that is needed from Linder to add to Littleworth's teaching. So, it seems besides the point whether we're talking about stereoscopic or non-stereoscopic images, all that is really needed here is to flesh out the meaning of how you would use Littleworth's control points. And so, I don't understand why we need to go any further than that in thinking about the motivation issue. So, we believe our position is that the motivation issue is core to the proposed combination of Littleworth and Linder, because, again, Littleworth does not explicitly disclose how you do this correlation aspect, and I think that ties into our substantial evidence argument. The board relied on a half-sentence in Linder to support its finding that Linder could apply to non-stereoscopic images. And when you look at that full sentence in Linder, that sentence says that it is applying to stereoscopic images. And so, because of that statement and the foundational teaching that the board is relying on in Linder, that there is an incompatibility with the proposed combination. Counsel, you've used all your time and all your rebuttal time. I will restore a little bit of our rebuttal time, but we need to hear from Ms. Fruin. Thank you. Good morning, Your Honors. May it please the Court. My name is Megan Raymond on behalf of NIRMAP. Given the questions on inherency, perhaps I will start there. NIRMAP, of course, didn't argue inherency below, and, indeed, what NIRMAP was doing was interpreting what Littleworth meant, the words of Littleworth itself. Didn't the board expressly disavow that it was relying on inherency?  The board did. So what other arguments do you have? Certainly, Your Honor. Just before we walk away from inherency, I guess the concern is when the board sees a lot of meaning into that word, because a skilled person in the art would see in that one word, I don't know, 150 words of detail, once, say, an expert or a board fact-finding does that, at what point does that kind of translation of a single word into 150 words of detailed meaning start to look a lot like inherency? I think it's when there's an actual gap rather than an interpretation. Here, I think what I heard Eagleview argue is that the issue, at least one of the issues, was that what the reference says is indicating a pitch rather than calculating a pitch, and so here, the expert hasn't made a very big leap to say indicating a pitch would be understood to mean calculating a pitch in this context, particularly in the context of the figures that are also in Littleworth. But you agree if the reference had never said the word pitch, and then Dr. Forsythe comes in and says, well, when I read this Littleworth reference, a skilled artisan would understand that what's going on here includes calculating a pitch. That would be an inherency theory? I think that would be closer, particularly without the figures. If there was something that said the figures show a building, then we wouldn't really know anything about pitch, but we do also have the figures here. So then turning on to Middleworth, perhaps, I heard, I think the Middleworth issue is not impacted by the inherency arguments. The board clearly relied on Middlebrook for pitch itself. The issue that I believe was raised by Eagleview this morning is actually an argument about whether Middleworth teaches calculating a pitch based on the images. And based on the images portion of that limitation is what we rely on Littleworth for, indeed the combination of Littleworth and Middlebrook. So what Eagleview was ignoring is the context of obviousness, and indeed the board specifically, this argument was made below, the board specifically found that this was not Petitioner's argument. The board said Petitioner does not rely on Middlebrook to teach those claim elements referring to the based on the images aspect of the combination. And this is supported by substantial evidence that the board cited, including at Appendix 2778, which is Exhibit 1028, Paragraph 49, and that's the fourth item. I'm trying to understand. So is this your argument that even, we don't even actually have to accept the inherency position that there was an alternative theory, which was the combination of Middlebrook and Littleworth teaching this, and that the board alternatively credited that as well? That's exactly correct, Your Honor. And that issue also is impacted by the claim construction issue. And I can address claim construction if you'd like, but otherwise I can turn to motivation to combine. I would like you to address it. I just want to make sure I understand. Is your position that the board did not implicitly construe this term, or that it did implicitly construe it to not have any accuracy limitation, and that that is correct? I think the board certainly made a statement about what the claim doesn't require. And I don't think that raises to the level of claim construction per se. I think what the board was saying was that Littleworth doesn't meet the plain language of the claims, which is consistent, in fact, with what Eagleview said in its opening brief, which is the claims do not require a precise level of accuracy in the reference pitch calculation slash determination. Do we have to figure out if that's an exercise in claim construction, or just decide whether that's a correct understanding of the claims? I think you could just decide that it's a correct understanding of the application of the art to the claims here. And indeed, in any case, that issue was waived. In fact, this very same phrasing that Eagleview is now sort of glomming onto in the final written decision was in the institution decision itself, too, at page 40 to 41. That's not in the appendix, unfortunately. But there, too, in fact, the board made the same statement about Littleworth regarding the accuracy of sort of a particular measurement in Littleworth. And in fact, too, it's worth probably mentioning that with respect to Littleworth, that the place where this accuracy question arose was a disclosure in Littleworth about one of the particular models. And that model, they said, they determined that the appropriate sort of accuracy limitations within that model would be 150 millimeters for certain types of aspects of the model and 30 millimeters for other aspects of the model. And then, in fact, what they did was they relied on the 30 millimeter accuracy sort of limitation rather than 150 millimeters. So the 150 millimeter issue, which was why this whole issue about accuracy arose in the first place, was never actually used in a model for Littleworth anyway. Motivation to combine. Thank you, Your Honor. So the board here considered and rejected Eagleview's arguments about the applicability of Linder to Littleworth. Eagleview argues that it wouldn't have been motivated to combine because of these expected inaccuracies from combining Littleworth and Linder. But the teachings of Linder were found to be applicable to Littleworth regardless of whether one is limited to stereoscopic and regardless of, and that's supported by substantial evidence and is what the board found. The disclosures in Linder, which described the images used in its correlation and 3D model generation process, are required to use two photos, two or more photos, from the same object, but taken from different positions. That's applicable to Littleworth and indeed that's what the board found. So regardless of whether Linder is limited to stereoscopic images or not, what the board found and what the experts said was that that doesn't matter. All that's required is that you have two images with sufficient overlap and you have that here. But does it matter if some of the claims that are challenged say the pair of images are not stereoscopic? Is the analysis the same either way? The analysis is the same either way because it doesn't require, there's no requirement that the image pairs be stereoscopic image pairs in order to do the combination. And that's indeed what the board found. Dr. Bajaz said the contrary, right? He did. But that was a factual determination. Our expert indeed said that you would look at these, you would look at Linder, you would understand Linder to simply require with respect to stereoscopic images that there is sufficient overlap between the two images, but that there is enough, also that there's enough offset between the two images so that you can get the 3D modeling. If you don't have any offset between the two images, you wouldn't be able to get the 3D modeling. So when we're talking about sort of like being able to see from your eyes, that's because the eyes are coming from, you know, two different places in space, but you're getting that. If you have two completely disparate images, one top view, one oblique view. If you had two images with no overlap, then you wouldn't have the control points and know it wouldn't work. But that's not what we're talking about here. There's no dispute as to the images in Littleworth being overlapping. The question is simply whether they are stereoscopic or not. There co-pending litigation going on? There is co-pending litigation. What's the status of that? I believe it's currently stayed, Your Honor. Unless there are other questions, we'll get the time back.  Ms. Fu, I'll restore two minutes of rebuttal. I just want to make one point, Your Honor. So counsel read out a part of Linder at Appendix 2029. It is the last sentence in Linder that says, if we have two or more photos from the same object but taken at different positions, we may easily calculate 3D coordinates. The very beginning of that sentence, the same sentence says that Linder is referring to a principle called stereoscopic viewing. And again, that's the vision from your two eyes. So that same sentence is saying the two different positions that Linder is talking about is stereoscopic pairs or similar perspectives. And Linder clarifies that even in the immediately preceding paragraph, Linder is saying that the different positions are the left and right eye. And so Linder, I mean, this finding by the board that is supported by this part of Linder only refers to stereoscopic pairs. And so for that reason, there is no motivation to combine and there's no substantial evidence supporting the board's decision. Equal view respectfully ask the court to reverse or vacate and remand if there are no further questions. Okay. Thank you, counsel. This case is taken under submission. I thank both the counsel.